**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CAMERON LACROIX,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC.,<br><br>Defendant. | Civil Action No. 1:26-cv-12738-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Amazon.com Services LLC ("Amazon" or "Defendant") submits this Memorandum of Law in Support of Its Motion to Dismiss Plaintiff Cameron Lacroix's ("Plaintiff") First Amended Complaint ("FAC") in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) and, in the alternative as to Counts VII and VIII, pursuant to Fed. R. Civ. P. 12(b)(1).

**INTRODUCTION**

With the FAC, pro se Plaintiff Lacroix attempts to convert Amazon's measured response to an escalating workplace health and safety concern into a federal lawsuit. But the allegations in Plaintiff's Amended Complaint supply the obvious, lawful explanation for the challenged conduct—and do not suggest Plaintiff's plausible entitlement to relief under any cause of action. The FAC alleges that, across two days in December 2025, Plaintiff connected ordinary workplace conversations, coworkers, visitors, vehicles, and people in public spaces outside Amazon's BOS21 office in Boston's Seaport to perceived covert law enforcement operations against him. He alleges Amazon employees were coordinating with "rogue" federal agents, believing strangers intended to seize and destroy his cell phone. He contemporaneously posted those beliefs publicly to social media. The FAC alleges that he experienced panic symptoms, left work, slammed his car door, screamed profanities, cried, and conveyed his belief that the government intended to charge him

with drug, sex, and murder offenses. The FAC alleges that the following day Amazon asked Plaintiff what had happened, arranged an EMS evaluation with Plaintiff's agreement, directed Plaintiff to take paid time off, asked him to establish fitness-for-duty before returning to work, and ultimately returned him to work in good standing in May 2026. Plaintiff remains employed.

The Court need not decide whether Plaintiff's interpretations of the events were correct, diagnose the situation, or determine that Plaintiff posed an actual threat. Inquiry at the motion to dismiss stage is narrow: the FAC alleges objective circumstances that reasonably called for Amazon's prompt inquiry into workplace safety, Plaintiff's present fitness for duty, and the events of December 4–5, 2025 described in the FAC. Those allegations defeat Plaintiff's conclusory assertion that Amazon acted *because of* disability or protected activity. The Americans with Disabilities Act ("ADA") does not require an employer to ignore safety concerns or disruptive conduct even if the employee may have a disability, and it expressly permits inquiries and examinations that are job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A); *Calef v. Gillette Co.*, 322 F.3d 75, 86–87 (1st Cir. 2003).

Plaintiff brings eight counts in his Amended Complaint: retaliation in violation of the ADA and M.G.L. c. 151B ("Chapter 151B") (Counts I and IV); disability discrimination in violation of the ADA and Chapter 151B (Counts II and V); impermissible disability-related inquiry and medical examination (Count III); false imprisonment (Count VI); and intentional and negligent infliction of emotional distress ("IIED" and "NIED", respectively) (Counts VII and VIII).

All counts warrant dismissal with prejudice.

## I. Adverse action is lacking, dooming the discrimination and retaliation counts

The discrimination and retaliation claims (Counts I, II, IV, and V) independently fail because the FAC does not plausibly plead an actionable adverse action. The FAC alleges that Amazon placed Plaintiff on a *paid* leave and reinstated him in good standing after he established

his fitness for duty. The FAC describes temporary safety, investigatory, and return-to-work measures, including a brief meeting with security contractors, an EMS evaluation, and related access restrictions—not a termination, demotion, or reduction in title or compensation. There is no allegation that Amazon left Plaintiff worse off with respect to an actual term or condition of his employment or placed him at any objectively material disadvantage. Plaintiff's effort to supply the missing injury through assertions of a derailed "promotion trajectory" or delayed RSUs fail: he identifies no available position, application, promotion decision, vested award, entitlement, or concrete differential. Conclusory and contingent theories cannot transform temporary measures that preserved Plaintiff's employment into actionable discrimination or retaliation.

## II. Retaliation requires protected activity and discrimination requires bias—both are lacking

The retaliation claims (Counts I and V) additionally fail because the vast majority of what Plaintiff labels "protected activity"—cybersecurity reports, perceived surveillance, confidentiality concerns, alleged harassment untethered to disability, and complaints about alleged undercover law enforcement activity—do not involve any allegation that Plaintiff exercised a right protected by, or opposed a practice forbidden by, the ADA or Chapter 151B. As a result, they are not protected activities for purposes of alleging retaliation. Even assuming Plaintiff's months-earlier leave request or references to "disability-related treatment" constituted protected activity, the FAC pleads only temporal sequence, not retaliatory causation. The same allegations identify an obvious intervening reason for Amazon's conduct: Plaintiff's escalating behavior and apparent acute distress. The discrimination claims (Counts II and IV) likewise do not plausibly allege that Amazon acted *because of* disability but rather because the circumstances described in the FAC mandated its response. Nor do allegations characterizing past performance or eventual reinstatement establish that Plaintiff could perform all essential functions of his job during the discrete period in which Amazon sought confirmation of his fitness for duty.

## III. Medical inquiries are permissible for safety and to discern fitness for essential functions

Plaintiff's "impermissible disability-related inquiry and medical examination" claim (Count III) similarly fails because the FAC itself pleads objective evidence authorizing such an inquiry. *See* 42 U.S.C. § 12112(d)(4)(A). Amazon was not required to await an injury before asking whether Plaintiff could safely and effectively perform his job. As pleaded, the alleged examination was directed to present concerns after a series of acute workplace episodes described in the FAC. Plaintiff's alleged frustration with Amazon's process does not eliminate Amazon's obligation to assess workplace health and safety, including by requiring a fitness-for-duty evaluation.

## IV. False imprisonment requires compelled confinement by Amazon—it is not pled

The false imprisonment claim (Count VI) should be dismissed because the FAC does not plead facts establishing that any contractor who allegedly restrained Plaintiff acted as Amazon's agent with authority to impose confinement. Moreover, the FAC fails to plead a claim for false imprisonment because, as alleged, Plaintiff voluntarily entered the conference room, no one locked the door, touched him, barricaded him, or threatened force during the brief meeting. Plaintiff concedes that he agreed to speak with EMS, declined transport, and returned to his work station following the conversation—and, in fact, thereafter refused to leave the premises when asked to do so. Considering the alleged events preceding the conversation in the conference room, directing a brief reasonable workplace inquiry does not plausibly allege intentional, unlawful confinement.

## V. Infliction of emotional distress claims are barred by exclusivity

Finally, the IIED and NIED claims (Counts VII and VIII) are independently barred by the exclusivity provision of the Massachusetts Workers' Compensation Act ("WCA"). They seek emotional-distress damages arising entirely from personnel, security, leave, investigation, access, and return-to-work actions occurring in the employment relationship. *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558–61 (1996). These claims additionally fail under Rule 12(b)(6) because

the allegations in the FAC—a paid suspension, workplace investigation, and fitness review—are not "utterly intolerable in a civilized community" as a matter of law, are insufficient to establish IIED, and the NIED claim identifies no independent duty in tort.

For these reasons, explained further below, the Court should dismiss Plaintiff's Amended Complaint in its entirety, with prejudice.

**<u>RELEVANT FACTS</u>**

Plaintiff began working for Amazon in 2021 and, through multiple promotions, Amazon ultimately advanced him to a Level 4 Program Manager position. FAC ¶¶ 28–34. In September 2025, Plaintiff began an approved leave that he attributed to mental and physical exhaustion and disclosed anxiety and depression. *Id.* ¶¶ 41–43. Amazon welcomed Plaintiff back to work from that leave during the week of November 24, 2025, the week of the Thanksgiving holiday. *Id.* ¶¶ 44–47.

Before returning in November, Plaintiff reported cybersecurity and workplace-security concerns. *Id.* ¶¶ 48-55. He alleged a possible compromise of his Amazon laptop, stated that a person at workstation BOS21.05.790.F1 might be an "insider threat," and later reported finding registry keys that he believed suggested pornography access associated with a prior laptop user. *Id.* He also filed a separate federal lawsuit alleging that "rogue agents," including an individual using an alias, had subjected him to psychological warfare, and that neighbors were undercover agents.[1] *Id.* ¶¶ 56–59.

After returning from leave in November 2025, Plaintiff alleges that he interpreted workplace conversations and activity as connected to him, his separate lawsuit, federal law enforcement, searches, criminal accusations, and efforts to control evidence. *Id.* ¶¶ 60–94. In other words, he connects the allegations in the FAC to *Lacroix v. Leatherman*. *Id.* He surreptitiously

[1] *Cameron Lacroix v. Brett E. Leatherman, et al.*, No. 1:25-cv-13452-ADB (D. Mass. filed Nov. 19, 2025).

took photographs of a coworker who he believed was conspiring with federal agents. *Id.* ¶¶ 65, 76, 82, 116. He posted publicly on social media about the FBI, his "mental anguish," and an alleged wider conspiracy involving "a technology company." *Id.* ¶¶ 86, 91–92. Plaintiff alleges increasing anxiety and hypervigilance and a belief that events inside and outside BOS21 were connected in a conspiracy by law enforcement to charge him with serious crimes. *Id.* ¶¶ 87–94.

On December 4, Plaintiff alleges that he overheard coworkers arranging an "operation," saw individuals on the public street "near the Boston Wharf Road and Seaport Boulevard intersection" wearing Verizon vests whom he "knows" were law-enforcement officers, and believed they intended to seize and destroy his phone.[2] *Id.* ¶¶ 95–128. He alleges he believed two unidentified men in an elevator acted aggressively and made him feel "boxed and trapped" and that multiple coworkers were operating undercover. *Id.* ¶¶ 129–36, 41-42. Plaintiff alleges he reported harassment and panic symptoms to his manager and submitted an Ethics complaint alleging workplace conduct, confidentiality breaches, retaliation, intimidation, harassment, disability-related treatment, anxiety, and emotional distress. *Id.* ¶¶ 137–48. After leaving work with permission, Plaintiff alleges he experienced emotional outbursts and believed the government intended to charge him with drug, sex, and murder offenses. *Id.* ¶¶ 149–51. He then posted to social-media tagging federal authorities and stating that he planned to go to the FBI Boston office the next day. *Id.* ¶¶ 152–54.

Plaintiff continued to have similar concerns the following day—alleging that, as he walked down the street toward BOS21 to begin his workday, he "noticed that two men were heading in

[2] Plaintiff alleges that he "heard one man [in a Verizon vest] ask 'F1? That's the location in front of F1, right?'" and that Plaintiff "understood the reference to 'F1' as potentially relating to workstation BOS21.05.790.F1 and believed the individuals were the federal agents" working with the coworker whom he photographed at work. *Id.* ¶¶ 115-16. This Court can take judicial notice of the fact that F1 Arcade Boston (87 Pier 4 Blvd., Boston, MA 02210) is located approximately one block from the intersection where Plaintiff alleges that he overheard that statement.

his direction that appeared to be law enforcement officers," and he photographed them. *Id.* ¶ 157. Later that morning ("[a]t approximately 11:33 a.m."), Plaintiff's manager "asked whether he was okay because of the situation he had experienced a day prior." *Id.* ¶ 158. Approximately 45 minutes later ("[b]etween 12:13 p.m. and 12:40 p.m."), Plaintiff alleges he "was directed to a BOS21 conference room" where two security contractors for Amazon asked him about his current mental health conditions and treatment. *Id.* ¶¶ 159–63. Plaintiff alleges a security contractor offered to get him a glass of water but told him he could not leave or retrieve his own water during the meeting. *Id.* ¶¶ 164–69. Plaintiff alleges that security encouraged him to be evaluated and Plaintiff agreed to an EMS evaluation after which point Amazon called Boston EMS to BOS21. *Id.* ¶ 170. EMS evaluated Plaintiff, Plaintiff declined transport to the hospital, and Plaintiff returned to his desk to join a call scheduled for 1:00 pm. *Id.* ¶¶ 171–76. When security later told him to work from home for the rest of the day, Plaintiff "told [security] it was unnecessary because he was fine." *Id.* ¶¶ 177–78. Plaintiff alleges that before 2:00 p.m., a Senior Manager told Plaintiff to go home for the day, noting that Plaintiff would be paid and his performance would not be affected. *Id.* ¶ 179.

That evening, Amazon placed Plaintiff on paid suspension, initiated a fitness-for-duty process, and commenced an investigation into the events of December 4 and 5. *Id.* ¶¶ 179–180. As described in the FAC, Amazon uses the fitness-for-duty process when it "has a concern that an employee may present a significant workplace safety risk to themselves or others, or certain risks to Amazon or Amazon customers." *Id.* ¶ 209. Plaintiff alleges that Amazon took those steps "after he complained about [a coworker's] conduct and the effort Plaintiff believed was aimed at seizing or destroying his phone." *Id.* ¶ 180.

Two days later, on December 7, 2025, "Plaintiff informed Amazon that he was seeking medical treatment, experiencing significant anxiety, had sought crisis counseling, and was considering inpatient treatment." *Id.* ¶ 196. "Medical providers determined that Plaintiff required

additional treatment and stabilization, and Plaintiff was admitted for psychiatric treatment and crisis stabilization. Plaintiff received psychiatric care, medication management, counseling, therapeutic services, and treatment planning. Medical providers diagnosed Plaintiff with Unspecified Trauma- and Stressor-Related Disorder." *Id.* ¶¶ 219–23.

By April 2026, Plaintiff completed the fitness requirements, and in May, Amazon completed its review and returned Plaintiff to work in good standing with a new manager and potential temporary work-from-home support. *Id.* ¶¶ 231-35.

## <u>ARGUMENT</u>

### I. Legal Standard

To survive a 12(b)(6) motion, a complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[M]ere conclusory statements" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the Court can reasonably infer that the defendant is liable for the misconduct alleged. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Dismissal is appropriate if the complaint "fails to set forth factual allegations . . . respecting each material element necessary to sustain recovery[.]" *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotation and citation omitted).

While a pro se complaint receives a liberal construction, pro se status does not excuse compliance with Rule 8 or require the Court to credit conclusory assertions. *See Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 220, n.13 (1st Cir. 2016) ("While courts have historically loosened the reins for pro se parties, the 'right of self-representation is not a license not to comply with relevant rules of procedural and substantive law.") (internal quotations and citations omitted).

The FAC's factual allegations, including allegations inconsistent with its proffered legal labels, govern the analysis. *See Ocasio-Hernández*, 640 F.3d at 12–13.

## II. The Discrimination and Retaliation Claims (Counts I, II, IV, and V) Plead No Actionable Adverse Employment Action

An ADA disparate-treatment claim requires some injury to an employment term or condition—facts showing that the employee was left worse off at work. *Muldrow v. City of St. Louis*, 601 U.S. 346, 350, 354-59 (2024); *Ríos v. Centerra Grp., LLC*, 106 F.4th 101, 112 n.4 (1st Cir. 2024). Chapter 151B similarly requires a material disadvantage in working conditions. *MacCormack v. Bos. Edison Co.*, 423 Mass. 652, 662-64 (1996). Retaliation requires an objectively materially adverse action that might dissuade a reasonable worker from protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 67-70 (2006); *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 706-08 (2011).

The FAC alleges a brief workplace inquiry and EMS evaluation, a direction to leave with pay, paid suspension, investigation, fitness review, and temporary access restrictions. FAC ¶¶ 158-97, 202-04, 226-43. It alleges no diminution or discipline. Instead, Amazon maintained Plaintiff's employment and returned him to active employment in good standing. *Id.* ¶¶ 10, 235. Plaintiff remains employed. Those allegations do not plausibly establish injury to a present term or condition of employment or an objectively material disadvantage.

The speculative alleged promotion, equity, and reputational harms do not cure that defect. The FAC identifies no open position, application, eligibility criteria, selection process, decisionmaker, comparator, promised promotion, or decision denying advancement. Nor does it identify an award agreement, grant date, number of shares, vesting date, eligibility rule, vested interest, denial decision, or monetary difference attributable to the challenged period. *Id.* ¶¶ 38-40, 249, 254, 260, 271, 276. Generalized allegations of lost career progression, seniority, reputation, or future compensation likewise identify no concrete change in level, service date, salary band,

performance rating, or benefit entitlement. *See Walsh v. HNTB Corp.*, 169 F.4th 330, 340-41 (1st Cir. 2026) (affirming summary judgment for employer post-*Muldrow* where a performance improvement plan did not alter duties, title, compensation, or eligibility for other opportunities).

An employer's action is not adverse merely because the employee found it upsetting, stigmatizing, or unfair; the action must actually affect a term or condition of employment. *See Walsh*, 169 F.4th at 340-41. *Walsh* specifically rejects a categorical rule that a workplace process is adverse merely because of its label and instead requires examination of its pleaded effects. *Id.* Counts I, II, IV, and V should be dismissed.

## III. Plaintiff Does Not Plausibly Plead A Retaliation Claim (Counts I and V)

ADA retaliation requires protected conduct, a materially adverse action, and a causal connection between the two. *Kelley v. Corr. Med. Servs., Inc.*, 707 F.3d 108, 115 (1st Cir. 2013); 42 U.S.C. § 12203(a). Chapter 151B similarly prohibits retaliation "because" a person opposed practices forbidden by the statute or participated in a statutorily protected proceeding. M.G.L. c. 151B, § 4(4); *Mole v. Univ. of Mass.*, 442 Mass. 582, 591–92 (2004).

### A. The FAC does not plausibly identify protected activity as the basis for Amazon's response

The ADA's retaliation provision protects actions such as requesting a reasonable accommodation, opposing unlawful discrimination, or participating in ADA proceedings. *See Wright v. CompUSA, Inc.*, 352 F.3d 472, 477-78 (1st Cir. 2003). But opposition must communicate a good-faith, reasonable belief that the employer engaged in unlawful discrimination; general complaints about unfairness, security, confidentiality, or workplace conflict do not suffice. *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009); *Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 121 (2000).

The FAC groups together disability disclosure, leave, cybersecurity reporting, surveillance allegations, requests for help, reports of harassment, and internal complaints. FAC ¶¶ 6, 49, 59-63,

94, 145, 178. Cybersecurity and insider-threat reports, and complaints about searches, confidential material, surveillance, or efforts to seize a phone, do not themselves invoke ADA or Chapter 151B rights. *See Fantini*, 557 F.3d at 32. The Court may assume for this Motion that the September leave request and December reference to "disability-related treatment" were protected, but that assumption does not convert all contemporaneous reports into protected disability activity or eliminate the need to plead causation. While discussed more fully *infra*, not only does Plaintiff <u>not</u> plead causation, he affirmatively alleges that Amazon initiated the challenged inquiry "after he complained about [a coworker's] conduct and the effort Plaintiff believed was aimed at seizing or destroying his phone." *Id.* ¶ 180. That conduct is plainly not statutorily protected.

### B. Timing alone cannot plausibly establish causation in light of the intervening events pleaded in the FAC

While temporal proximity can sometimes support causation, the inference weakens or disappears when the complaint itself, as here, alleges intervening events that independently explain the action. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Mole*, 442 Mass. at 595–96; *Ponte v. Steelcase Inc.*, 741 F.3d 310, 323 (1st Cir. 2014). The September leave request preceded the December measures by approximately two-and-a-half months, and the FAC alleges intervening conduct by Plaintiff immediately before Amazon acted. *See Clark Cnty*, 532 U.S. at 273-74 (temporal proximity must be "very close," citing case holding that 3 months is too long to establish causation); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) (intervening events suggested "absence of a causal connection between the statutorily protected conduct and the adverse employment action, not the converse."). The proximity between the alleged December 4 Ethics complaint and December 5 inquiry exist because, as alleged, both arose from the same observable episodes described in the FAC. The FAC must allege facts supporting an inference that particular decisionmakers acted *because of* the protected aspect of the report. It does not—in fact,

it does not identify any decisionmaker. There is no requisite alleged connection between a decisionmaker and knowledge of any purported protected activity.

By Plaintiff's own telling, December 5 was a challenging day—he screamed and cried and believed he faced imminent drug, sex, and murder charges, and he made public social media posts tagging law-enforcement agencies stating his intention to show up at the FBI's Boston Office. *Id.* ¶¶ 149–54. Those allegations provide the obvious reason for Amazon's prompt wellness and safety response—and defeat any effort by Plaintiff to state a claim that his approved September leave request or reference to "disability-related treatment" on December 4 had anything to do with Amazon's actions in response to his observable behavior on December 4, as alleged.

The subsequent temporal sequence likewise defeats retaliation. Amazon placed Plaintiff on paid suspension, initiated Amazon's standard fitness-for-duty process used when it believes "an employee may present a significant workplace safety risk to themselves or others" (*Id.* ¶ 209), continued a confidential investigation, and ultimately returned Plaintiff to work in good standing in May 2026 after he established fitness for duty. *Id.* ¶¶ 179–218, 226–43. The FAC offers no facts permitting any inference that any action by Amazon was imposed to punish protected conduct. Counts I and V should be dismissed.

## IV. Plaintiff Does Not Plausibly Plead A Discrimination Claim Under The ADA Or Chapter 151B (Counts II and IV)

An ADA disparate-treatment claim requires a disability, qualification to perform the essential functions with or without reasonable accommodation, an adverse employment action, and action because of disability. 42 U.S.C. §§ 12111(8), 12112(a); *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir. 2000). Chapter 151B likewise protects a "qualified handicapped person" capable of performing essential functions with reasonable accommodation. M.G.L. c. 151B, §§ 1(16)–(17), 4(16); *Godfrey v. Globe Newspaper Co.*, 457 Mass. 113, 120 (2010). Although a plaintiff need not plead every *prima facie* detail, he must allege facts making

disability causation plausible. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54–55 (1st Cir. 2013). He does not.

**A. The FAC pleads no facts supporting disability-based motive**

The FAC's theory rests on sequence: Plaintiff alleges Amazon knew of anxiety and depression, then asked medical questions and used a fitness process. FAC ¶¶ 258–60, 268–71. But knowledge plus action is not discrimination. As shown in the FAC, the conduct immediately preceding the inquiry—not a diagnosed or perceived disability—triggered Amazon's response. The FAC does not plead discriminatory causation, alleging instead that Amazon initiated the challenged inquiry in response to Plaintiff's "complain[t] about [a coworker's] conduct and the effort Plaintiff believed was aimed at seizing or destroying his phone." *Id.* ¶ 180. The FAC identifies no remark, comparator, instruction, or policy suggesting bias against mental-health conditions. It alleges that Amazon approved Plaintiff's September leave, welcomed Plaintiff back in November 2025, paid him during the leave that began in December 2025, sought individualized medical information from Plaintiff legitimately, continued investigating, and offered Plaintiff a new manager and temporary work-from-home support when it returned him to work in good standing. *Id.* ¶¶ 41–47, 179, 202, 226–43. Those facts are inconsistent with the bare conclusion that Amazon treated disability—or perceived disability—as disqualifying.

*Calef* is instructive. There, the First Circuit rejected the premise that an employer discriminates whenever it reacts to conduct associated with a disability, explaining that the ADA does not require the employer to disregard workplace conduct requirements. 322 F.3d at 86–87. The FAC alleges no termination and no blanket exclusion. It alleges a temporary, paid separation and individualized assessment prompted by a series of discrete episodes described in the FAC.

### B. Plaintiff's past performance and later return to work do not establish that he was qualified to perform his essential job duties during the relevant period

Plaintiff alleges prior performance and promotions, lack of discipline, and Amazon's eventual return-to-work decision as support for the notion that he was consistently qualified to perform his job, including in December 2025. FAC ¶ 259. But those allegations concern different time periods. Qualification is evaluated at the time of the challenged action. *See Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 106 (1st Cir. 2005). The FAC itself alleges that on December 4 Plaintiff reported panic symptoms, left work, and believed he faced serious criminal charges—and by December 7, he sought crisis counseling and was admitted for psychiatric stabilization. FAC ¶¶ 139–54, 196, 219–25. Those allegations do not plausibly establish that Plaintiff could perform all essential functions of his job at that time.

In the FAC, Plaintiff does not identify the essential functions of his job or contend that he could perform them during the relevant period with or without a specific reasonable accommodation. Plaintiff does not allege that any major life activity was substantially limited.[3] A general assertion that he was "qualified," FAC ¶¶ 259, 270, is an improper element recital without plausible factual support in the FAC and cannot save Plaintiff's claim from dismissal. Amazon's later determination that Plaintiff was fit to return to work (following months of treatment) says nothing about his ability in December 2025. Likewise, an EMS decision not to transport Plaintiff, involuntarily, on December 5 is not a job-fitness determination. Accordingly, in addition to failing because the FAC does not to plead an actionable adverse action (*see* Section II, *supra*), the FAC does not plausibly allege Plaintiff was qualified. Counts II and IV should be dismissed.

[3] Plaintiff's allegation that clinicians recommended returning to work as "healthy for him" and manageable with medication (FAC ¶ 206) undercuts any such claim.

## V. Plaintiff Does Not Plausibly Plead A Claim For "Impermissible Disability-Related Inquiry And Medical Examination" (Count III) Under The ADA

### A. The ADA allows a targeted inquiry based on objective evidence of impaired function or safety concerns

The ADA provides that an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A) (emphasis added). The implementing regulation permits inquiries into employees' ability to perform job-related functions. 29 C.F.R. § 1630.14(c). Business necessity exists where objective evidence gives the employer a reasonable basis to believe that a condition may impair essential functions or pose a safety risk. *See Brownfield v. City of Yakima*, 612 F.3d 1140, 1146–48 (9th Cir. 2010); *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1311–13 (11th Cir. 2013); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811-12 (6th Cir. 1999).

Courts recognize that employers need not wait for harm before obtaining a professional assessment. In *Brownfield*, the Ninth Circuit upheld a psychological fitness examination based on concerning workplace behavior even without proof that the employee actually posed a direct threat. 612 F.3d at 1146–48. In *Owusu-Ansah*, the Eleventh Circuit likewise held that a psychiatric evaluation was job-related and necessary where an employee's workplace conduct and reported statements gave rise to concern; the ability to interact safely and appropriately can itself be job-related. 715 F.3d at 1311–13. *Calef* confirms in this Circuit that safety-related conduct and effective workplace behavior may bear directly on qualification. 322 F.3d at 86–87. Amazon's inquiries as pleaded were consistent with federal and state disability law.

### B. The FAC alleges the objective basis for Amazon's inquiry, demonstrates business necessity as a matter of law, and a call to EMS under the pleaded circumstances does not amount to a prohibited examination

Business necessity appears on the face of the FAC. Plaintiff alleges an escalating series of reports connecting Amazon employees, outsiders, law enforcement, surveillance, searches, criminal accusations, and plans to seize or destroy evidence. FAC ¶¶ 56–154. Plaintiff's manager checked on him the next morning, given the pleaded conduct. *Id.* ¶ 158. These are not the alleged assumptions of others; they are the conduct and contemporaneous reports pleaded by Plaintiff and illustrate the objective, reasonable basis to assess fitness for duty. Against that backdrop, alleged questions concerning mental health, treatment, medication, and history were reasonably directed to assess safety and understand present functioning to determine whether professional assessment or support was appropriate. 42 U.S.C. § 12112(d). The FAC's characterization of questions as "not narrowly tailored," *id.* ¶ 163, is not a factual allegation.[4]

Further, calling EMS was not itself a prohibited employer medical examination. Plaintiff pleads that he agreed to speak with EMS; EMS evaluated him; he declined transport; and he then joined a work-related call. *Id.* ¶¶ 170–75. Section 12112(d)(4) does not prohibit an employer from asking emergency professionals to assess an employee during an acute workplace episode, particularly where the employee consents. *Brownfield*, 612 F.3d at 1146–48; *Owusu-Ansah,* 715 F.3d at 1311–13. Nor did EMS's non-transport decision resolve whether Amazon could conduct an employment-specific fitness review. *Id.* Amazon's conduct, as pleaded, was job-related and consistent with business necessity. Count III should be dismissed.

[4] The FAC does not state the precise wording, duration, requested records, or use of each alleged question in a way that could permit an inference that Amazon sought information unrelated to current fitness. It alleges only topic categories.

## VI. Plaintiff Does Not Plausibly Plead A Claim For False Imprisonment (Count VI)

### A. The FAC does not plausibly plead an agency relationship

Count VI should be dismissed because the FAC does not plausibly allege that the contractors who allegedly restrained Plaintiff acted as Amazon's agents with authority to do so. While the FAC characterizes the relevant actors vaguely as Amazon's "agents and representatives," FAC ¶ 280, such conclusions are not entitled to the presumption of truth on a Rule 12(b)(6) motion. *See A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80–81 (1st Cir. 2013). Under Massachusetts law, an agency relationship requires facts showing that the purported agent acted on the principal's behalf and subject to the principal's control. *Hohenleitner v. Quorum Health Res., Inc.*, 435 Mass. 424, 431–32, 435–38 (2001). And even where some agency relationship exists, vicarious liability requires that the challenged conduct fall within the actor's authority or the scope of the relationship giving rise to liability. *See Berry v. Commerce Ins. Co.*, 488 Mass. 633, 637–40 (2021).

The FAC pleads no such facts. It alleges that two contractors participated in the meeting with Plaintiff and that one of them denied Plaintiff's request to get water, FAC ¶¶ 159–75, but it does not allege who employed or supervised the contractors, that Amazon controlled how they conducted the meeting, that Amazon instructed them to restrict Plaintiff's movement, or that imposing confinement fell within the scope of any authority Amazon granted them. Indeed, Plaintiff allegedly recognized that the two individuals "were contractors." *Id.* ¶ 162. The FAC's bare assertion that these contractors were nevertheless Amazon's "agents and representatives," *id.* ¶ 280, cannot substitute for factual allegations establishing Amazon's right of control or the contractors' authority to engage in the conduct underlying Count VI. *See Theos*, 431 Mass. at 742–45. Accordingly, the FAC does not plausibly allege a basis for imputing the contractors' alleged confinement of Plaintiff to Amazon, and Count VI should be dismissed.

**B. The FAC does not state a claim for unlawful false imprisonment**

Even if Plaintiff could establish that the security contractors were Amazon's agents, Count VI nevertheless fails to state a claim for unlawful false imprisonment. False imprisonment under Massachusetts law is "the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement." *Noel v. Town of Plymouth*, 895 F. Supp. 346, 354 (D. Mass. 1995) (citing Restatement (Second) of Torts § 35); *see Coblyn v. Kennedy's, Inc.*, 359 Mass. 319, 321 (1971). The restraint must be complete and accomplished by force, threats, or other conduct that would cause a reasonable person to believe he could not leave. *See Sarvis v. Boston Safe Deposit & Tr. Co.*, 47 Mass. App. Ct. 86, 98–99 (1999). Mere questioning, moral pressure, or a workplace instruction, without unlawful restraint, is insufficient.

The FAC does not plausibly allege complete, unlawful confinement. Plaintiff voluntarily entered and sat in the conference room. FAC ¶¶ 159–60. He does not allege that the door was locked, an exit blocked, he was touched, or anyone threatened force or arrest during the meeting. Instead, he alleges that a security contractor said "no" when he requested to leave or obtain water, security then offered to bring Plaintiff water, and requested he remain engaged in the brief dialogue. *Id.* ¶¶ 164–69. The alleged meeting lasted approximately twenty-seven minutes before Plaintiff agreed to speak with EMS and EMS was dispatched. *Id.* ¶¶ 159, 170. He declined transport and returned to his desk. *Id.* ¶¶ 171–75. These allegations describe a brief employer-directed inquiry and consensual evaluation, not confinement by force or a reasonable threat of force.

Plaintiff alleges that, following the meeting in the conference room, a security contractor told him that the police would remove him if he refused to go home. *Id.* ¶ 178. That is not confinement; it is a direction to leave Amazon's premises. The fact that Plaintiff resisted leaving

and wanted to continue working is irreconcilable with a theory that Amazon's objective was to imprison him. Count VI should be dismissed.

## VII. Plaintiff's IIED (Count VII) And NIED (Count VIII) Claims Are Barred By The Workers' Compensation Act ("WCA") And Fail To State A Claim For Relief

### A. WCA exclusivity bars both claims

The WCA makes workers' compensation the exclusive remedy for personal injuries arising out of and in the course of employment. Mass. Gen. Laws ch. 152, §§ 24, 26. The bar applies regardless of the alleged wrongfulness of the employer's conduct and encompasses emotional-distress claims based on personnel actions. *Estate of Moulton v. Puopolo*, 467 Mass. 478, 482-84 (2014); *Foley*, 381 Mass. at 548-52; *Green*, 422 Mass. at 558-61; *McCarty v. Verizon New Eng., Inc.*, 674 F.3d 119, 122 (1st Cir. 2012).

Counts VII and VIII seek emotional-distress damages arising from workplace questioning, security response, EMS involvement, paid suspension, investigation, access restrictions, fitness review, and return-to-work administration. FAC ¶¶ 286-96. Those alleged injuries arose from the employment relationship and are barred. *See McArdle v. Town of Dracut/Dracut Pub. Sch.*, 732 F.3d 29, 37 (1st Cir. 2013). The Court should dismiss them under Rule 12(b)(6) and, alternatively, Rule 12(b)(1). *See Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 125 (D. Mass. 2015).

### B. The FAC independently fails to plead IIED or NIED

IIED requires extreme and outrageous conduct, intent or recklessness, causation, and severe distress. *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976). Liability is reserved for conduct "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *Polay v. McMahon*, 468 Mass. 379, 385-86 (2014) (citation omitted). Ordinary employment investigations, criticism, discipline, and termination do not satisfy that standard. *Sena v. Commonwealth*, 417 Mass. 250, 263-64 (1994) (citation omitted). The alleged questioning, EMS referral, paid suspension, investigation, and fitness review do not approach that threshold.

NIED requires "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982); *see also Sullivan v. Bos. Gas Co.*, 414 Mass. 129, 132-37 (1993). "It is fundamental that there must be a showing of a duty of care owed to the plaintiff, because '[t]here can be no negligence where there is no duty'." *Conley v. Romeri*, 60 Mass. App. Ct. 799, 801 (2004) (affirming Rule 12 dismissal for lack of pleaded duty). Count VIII asserts a duty to handle complaints, medical information, security, fitness review, suspension, and return to work without causing distress. FAC ¶ 293. Massachusetts law does not recognize a free-standing tort duty to administer personnel processes without causing emotion, and Plaintiff may not repackage alleged statutory employment violations as negligence. *See Green*, 422 Mass. at 558-61. Count VIII therefore fails for this independent reason.

**VIII. Dismissal Should Enter With Prejudice**

Plaintiff already has amended his Complaint once in this action and supplied nearly 300 paragraphs detailing events, actors, chronology, alleged motives, injuries, and legal theories. The deficiencies identified in this Motion are not merely missing dates or names—although those are also peppered throughout the FAC—that a more definite pleading could cure. Further amendment would not alter the legitimacy of Amazon's conduct, as pleaded, and should not be permitted.

## CONCLUSION

For the foregoing reasons, Defendant Amazon.com Services LLC respectfully requests an order dismissing Plaintiff's Amended Complaint in its entirety, with prejudice.

DATED: September 17, 2026

Respectfully submitted,

DEFENDANT
AMAZON.COM SERVICES LLC

By its attorneys,

*/s/ Kristin McGurn*

Kristin McGurn (BBO No. 559687)
kmcgurn@seyfarth.com
Emily Miller (BBO No. 705662)
emmiller@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2026, a true copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants..

/s/ *Kristin McGurn*
Kristin McGurn