**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CAMERON LACROIX,
Plaintiff,

v. Civil Action No. 1:26-cv-12738-ADB

AMAZON.COM SERVICES LLC,
Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff Cameron Lacroix, proceeding pro se, respectfully submits this Opposition to Defendant Amazon.com Services LLC's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). For the reasons set forth below, the Motion should be denied, or, at minimum, any dismissal should be without prejudice and with leave to amend.

## INTRODUCTION

Amazon characterizes the events as routine paid leave and a workplace-safety inquiry. Plaintiff challenges the disability-related questioning, confinement, and prolonged exclusion from active work following his Ethics complaint, and opposes resolving disputed explanations at the pleading stage. In reality, Plaintiff was suspended due to a manufactured investigation after he caught and reported an insider threat at the company who was involved in cyber espionage against him.

## I. LEGAL STANDARD

The Court must accept well-pleaded factual allegations as true and draw reasonable inferences in Plaintiff's favor. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12-13 (1st Cir. 2011). A complaint must contain sufficient factual matter to permit a reasonable inference of

liability; plausibility is not a probability requirement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

An employment plaintiff need not plead a complete prima facie case. The complaint must be read as a whole, without requiring a one-to-one correspondence between each allegation and each element ultimately to be proven. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54-55 (1st Cir. 2013). Exact details that may become important at summary judgment are not necessarily required at the pleading stage. *DeAngelis v. Hasbro, Inc.*, 165 F.4th 646, 652-53 (1st Cir. 2026).

## II. PLAINTIFF PLAUSIBLY ALLEGES MATERIALLY ADVERSE ACTION

Amazon argues that Counts I, II, IV, and V fail because Plaintiff remained employed, was initially placed on suspension, and ultimately returned to work. That characterization overlooks the alleged employment consequences and is factually incorrect.

### A. The FAC alleges actual employment consequences, not merely subjective dissatisfaction.

Under *Muldrow v. City of St. Louis*, a discrimination plaintiff is not required to demonstrate a heightened or significant injury to an employment term or condition. Rather, the plaintiff must show some injury respecting the terms or conditions of employment. 601 U.S. 346, 350, 354-59 (2024).

Plaintiff alleges that Amazon placed him on suspension pending investigation, initiated a Fit for Duty process, and excluded him from active work for approximately five and one-half months. Amazon prohibited unauthorized worksite entry, restricted his access to employment systems and coworkers, interfered with benefits and employment resources, interrupted advancement, delayed or impaired RSU-related compensation, and affected career progression and seniority. FAC ¶¶ 37-40, 179-218, 226-250.

That is materially different from the performance-improvement plan considered on a developed summary-judgment record Walsh v. HNTB Corp., 169 F.4th 330 (1st Cir. 2026) cited by Defendant. Plaintiff here alleges actual exclusion from his workplace and ordinary job activities for months as well as consequences to advancement and compensation. Plaintiff's promotion document was designed promote him from Program Manager I to Program Manager II.

**B. Amazon demands evidentiary detail that is not required at the pleading stage.**

Amazon argues that Plaintiff has not identified a formal promotion application, selection process, grant date, exact number of shares, or precise monetary differential.

Plaintiff alleges that in August 2025, his manager, Lana Gladkaya, advised him that she would present his promotion document to Level 8 Director Divya Gopalakrishnan. FAC ¶ 37. This promotion would have advanced him from Program Manager I to Program Manager II. Plaintiff alleges that the suspension and prolonged exclusion interrupted that process. FAC ¶¶ 37-40.

DeAngelis rejected a similar argument that promotion allegations required detailed information about particular promotions and qualifications, explaining that deficiencies revealed through discovery could be addressed at summary judgment. 165 F.4th at 660-61. The status of Plaintiff's promotion materials, internal advancement discussions, compensation records, equity vesting, and employment opportunities likewise can be developed through discovery.

**III. COUNTS I AND V PLAUSIBLY STATE RETALIATION CLAIMS**

**A. The December 4, 2025 Ethics complaint expressly alleged disability-related treatment and retaliation.**

Amazon characterizes Plaintiff's reports as cybersecurity, surveillance, confidentiality, or unrelated workplace concerns. But the FAC alleges that his December 4, 2025 Ethics complaint

against Matthew Dolan reported improper disclosure of confidential information, retaliation, intimidation, harassment, disability-related treatment, panic symptoms, anxiety, and emotional distress. FAC ¶ 145. These allegations identify more than generalized unfairness.

Plaintiff also had disclosed mental-health conditions, requested and taken disability-related leave, provided medical information, and sought assistance concerning those needs. FAC ¶¶ 41-43. Together, these allegations plausibly identify activity protected by the ADA and Chapter 151B.

**B. Temporal proximity and additional factual allegations.**

Plaintiff submitted Ethics Complaint No. 312051695501 at approximately 3:13 p.m. on December 4, 2025. FAC ¶ 144.

Plaintiff additionally alleges, although this account is absent from the FAC, that Amazon Security falsely informed Boston EMS that he was hallucinating on December 5, 2025, hours after he introduced himself to Matthew Dolan, whom is an insider threat. According to a transcript in Plaintiff's possession, at or around 9:30 a.m. he asked Dolan why he was sitting where he was sitting which was a desk assigned to Lisa Robertson and two rows behind him. Plaintiff had sat on the fifth floor for approximately nineteen months without seeing Robertson despite a return to office mandate (“RTO”). Dolan told Plaintiff that employees could sit wherever they wanted; Plaintiff disputes that statement and notes that Amazon's Employee Directory ("Phone Tool") assigned Dolan a ninth-floor workspace and Plaintiff himself was instructed to sit at his assigned seat after a seating allocation which took place in January of 2025.

Plaintiff asked Dolan about what he did for Amazon and he said that he was with Amazon Business ("AB"), which Plaintiff knew was not Dolan's business title at the time.

Plaintiff grew suspicious while maintaining a casual conversation because AB employees sat on opposite side of the floor, where a previous Business Sales Advisor he had worked with, Craig Audette, had previously sat. Plaintiff mentioned that Dolan's actions could be risky to which led Dolan to say that he was a peon in the whole thing. Plaintiff believed Dolan become nervous which led to him stating that he had to leave for a meeting. Minutes later, Plaintiff observed Dolan heading in the direction of the elevators.

Hours later, and less than twenty-four hours after the Ethics complaint, Security personnel directed Plaintiff into a conference room, questioned him about a diagnoses which he knows was manufactured, medication, treatment, and providers. Security summoned EMS after not being able to convince Plaintiff to leave in an ambulance, which he found to be unusual, and then had him removed him from work. Plaintiff volunteered that he took medication for depression and anxiety yet did not state he was medicated for any other diagnosis. Plaintiff was eventually suspended pertaining to Dolan's background investigation and enrolled in Amazon's Fit for Duty process. FAC ¶¶ 159-180. Plaintiff possesses a recording of Dolan admitting that his biggest fear was that he was the one leading everything.

DeAngelis recognizes that periods measured in days or weeks can support a reasonable inference of causation at the pleading stage when considered in context. 165 F.4th at 655-56. The interval alleged here is shorter.

**C. The FAC alleges actual knowledge of the Ethics complaint.**

Amazon argues that Plaintiff identifies no decision maker who knew of protected activity. Yet during the December 5, 2025 encounter, Plaintiff asked whether he was being interrogated because of his Ethics report, and one of the security personnel asked him to discuss

it. FAC ¶ 161. This alleged reference to the complaint, coupled with the timing, supports an inference of retaliatory causation.

Plaintiff further alleges that on August 13, 2026, Human Resources Business Partner Maryna Omelko who is assigned to a Restricted Amazon Corporate Office in North Reading, Massachusetts told him that another Amazon's Legal Team was investigating Matthew Dolan and that she was not privy to the details.

### D. Amazon's asserted alternative explanation does not eliminate Plaintiff's plausible inference.

Amazon argues that Plaintiff's distress and workplace experience provide an innocent explanation. But where both innocent and retaliatory inferences are plausible, choosing between them is ordinarily a factual matter. DeAngelis, 165 F.4th at 656. Plaintiff relies on the chronology, the security personnel's knowledge, disability-specific questioning, prolonged exclusion, and the procedural departures discussed below.

Plaintiff also states that he possesses over fifty audio recordings, e-mails, images, and additional evidence which suggest that there is an on-going criminal conspiracy involving several insider threats inside and outside of the company. Plaintiff disputes Amazon's position that it has a meritorious defense as to the conduct of Matthew Dolan based on the evidence he intends to present.

## IV. COUNTS II AND IV PLAUSIBLY STATE DISABILITY-DISCRIMINATION CLAIMS

### A. Plaintiff plausibly alleges actual or perceived disability.

Amazon's alleged prior knowledge of Plaintiff's anxiety, depression, treatment, and mental-health leave, together with its disability-specific questioning and suspension, supports Plaintiff's actual-or-perceived-disability theory. FAC ¶¶ 41-43, 258.

According to Plaintiff, Human Resources Business Partner Jerry Martinez stated that Plaintiff was placed under investigation and then into a Fit for Duty process which do not run simultaneously. During a recorded May 19, 2026 call in Plaintiff's possession, Martinez said they did not initially realize what had happened to him and extended an apology for not supporting him enough.

Amazon's argument that Plaintiff identifies no substantially limited major life activity does not dispose of his regarded-as theory. Under 42 U.S.C. § 12102(3)(A), that prong encompasses prohibited action because of an actual or perceived impairment whether or not it limits, or is perceived to limit, a major life activity. Plaintiff expressly pleads both actual and perceived disability as a provider signed a form indicating that he had been traumatized due to the events he had been subjected to. FAC ¶ 258.

**B. Plaintiff plausibly alleges he was qualified.**

Amazon demands a function-by-function account of Plaintiff's ability to perform his Program Manager role. The FAC instead alleges promotions, satisfactory performance, no discipline, continued active work immediately before the challenged action, and participation in a scheduled business meeting after the EMS encounter. FAC ¶¶ 28-40, 171-176, 259. Those allegations support qualification under the pleading standard discussed in Section I.

Subsequent medical treatment does not conclusively establish inability to perform essential functions on December 5, 2025 or throughout the exclusion. By approximately December 15, Plaintiff informed Amazon that his providers recommended returning to work as beneficial and manageable with treatment, yet Amazon barred his return because of a separate Confidential Investigation. FAC ¶¶ 206-207. After his return to work in May of 2026, Plaintiff attended an Annual Review Meeting with Lana Gladkaya and Kimberly McDonnell. At this

meeting Plaintiff received a performance rating of "Exceeded High Bar" meaning that Plaintiff's work exceeded that of his peers.

## V. COUNT III PLAUSIBLY STATES A CLAIM UNDER 42 U.S.C. § 12112(d)(4)(A)

Section 12112(d)(4)(A) prohibits required medical examinations and disability-related inquiries unless job-related and consistent with business necessity. The psychiatric questioning alleged in FAC ¶¶ 162-163 implicates that provision. Amazon does not principally dispute that questioning occurred; it argues that business necessity justified both the inquiry and subsequent Fit for Duty process. The issue with this argument is that the manufactured mental health episode evapotrated the moment that EMS cleared Plaintiff and allowed him to resume working. After the completion of a work related call Scott Lancaster of Amazon Security continuously pressured Plaintiff to work from home without a plausible explanation.

### A. Amazon's authorities arose on materially different factual records.

Amazon relies heavily upon cases such as *Brownfield v. City of Yakima*, 612 F.3d 1140 (9th Cir. 2010), and *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306 (11th Cir. 2013). Those cases do not establish that every psychiatric inquiry following workplace distress is automatically lawful.

The First Circuit's decision in *Lopez-Lopez v. Robinson School*, 958 F.3d 96 (1st Cir. 2020), likewise arose at summary judgment and involved undisputed facts including an employee's nervous breakdown, statement of suicidal intent, statement that she was not okay, concerns involving interactions with students, and professional recommendations for an immediate evaluation.

Here, Plaintiff alleges that he denied suicidal ideation, homicidal ideation, and hallucinations; EMS did not transport him; and he returned to work and joined a business

meeting. FAC ¶¶ 171-176. Whether Amazon nevertheless possessed objective information justifying the scope of its inquiry and prolonged review is fact-intensive. In this case, Plaintiff has direct evidence in the form of a video showing Mr. Dolan talking about individuals wanting him to search his room. Plaintiff lived in a studio apartment and given the amount of surveillance mentioned in Lacroix v. Leatherman there was zero chance he would have been engaging in anything unlawful.

**B. Generalized safety concerns do not establish the scope or necessity of the inquiry.**

The employer must show job relatedness and business necessity. Lopez-Lopez, 958 F.3d at 105. Plaintiff alleges that the questioning concerned private psychiatric history and treatment rather than essential job functions. FAC ¶ 163. He also alleges departures from Amazon's Fit for Duty process, intermingling of a confidential misconduct investigation, and continued exclusion after medical providers supported his return. FAC ¶¶ 206-218. These allegations warrant examination of the particular inquiry and process rather than blanket acceptance of a safety rationale. Plaintiff has direct evidence showing that Matthew Dolan wanted to transfer into a new role after the filing of Lacroix v. Leatherman and that the job that the job requisition had a start date of December 5, 2025. This was the same exact date Plaintiff was seized, interrogated, and suspended pending a confidential investigation but Dolan was not moved into role until February of 2026, perhaps due to delayed offer letters which are typical in the recruiting process. Plaintiff had not committed any crimes involving distribution nor a dead body as cited by Dolan nor would he ever.

**VI. THE FAC PLAUSIBLY STATES FALSE IMPRISONMENT**

Amazon relies on Plaintiff's voluntary entry into the room and the absence of locked doors, physical contact, or express threats of force. Massachusetts law also recognizes restraint

or duress sufficient to make a reasonable person believe he is not free to leave. *Coblyn v. Kennedy's, Inc.*, 359 Mass. 319, 321-22 (1971).

### A. Plaintiff alleges actual restraint, not merely questioning.

Plaintiff alleges that two Amazon security personnel followed him into the conference room and expressly denied his requests to leave, obtain water himself, and return to an upcoming business call. FAC ¶¶ 159-169. Whether those instructions and the exercise of security authority caused a reasonable belief of confinement presents a factual question, notwithstanding the absence of physical force.

### B. The FAC adequately alleges an agency relationship.

The FAC identifies the individuals as Amazon security personnel and alleges that one displayed his work badge and said he worked for Amazon. They conducted the inquiry inside BOS21, immediately before Amazon's EMS call, suspension, Fit for Duty process, exclusion, and Human Resources communications. FAC ¶¶ 159-180. Those circumstances support an inference that they acted on Amazon's behalf in performing workplace security functions.

Plaintiff need not possess Amazon's security contracts, reporting structure, or internal instructions before discovery. Whether the contractors acted outside Amazon's granted authority remains an evidentiary issue rather than a reason to disregard the pleaded relationship.

## VII. COUNTS VII AND VIII SHOULD NOT SUPPORT DISMISSAL OF THE REMAINING CLAIMS

Amazon invokes the Massachusetts Workers' Compensation Act against the IIED and NIED counts. Plaintiff recognizes that *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558-61 (1996), broadly applies exclusivity to employment-related emotional-distress claims. Green distinguishes false imprisonment, defamation, and malicious prosecution, in which mental or

physical injury is incidental rather than indispensable. Id.; *Foley v. Polaroid Corp.*, 381 Mass. 545, 552-54 (1980).

Any ruling that exclusivity forecloses Counts VII and VIII should be limited to those common-law claims. It would not justify dismissal of the ADA, Chapter 151B, or false-imprisonment claims, or eliminate emotional-distress evidence and damages to the extent recoverable under surviving statutory claims.

## VIII. DISMISSAL WITH PREJUDICE IS UNWARRANTED

Amazon requests dismissal with prejudice as futile to amend. Rule 15 instead embodies a liberal amendment policy where additional factual allegations may cure deficiencies. Plaintiff is pro se, discovery has not occurred, and Amazon itself identifies allegedly missing details concerning promotions, equity awards, decision makers, agency relationships, and employment consequences. Those matters may be clarified through amendment or discovery. If any count requires additional factual specificity, Plaintiff requests leave to amend rather than dismissal with prejudice as he has been subjected to additional retaliation due to the filing of this suit.

On August 13, 2025 Plaintiff participated in a call with Kimberly McDonnell and Jonathan Bojas where he sought approval to gain access to a tool to aid escalation resolution. Ms. McDonnell and Mr. Bojas joked about issuing refunds with it which Plaintiff stated that this was not the case. Plaintiff felt uncomfortable because he had been convicted of computer fraud in 2014 and believed that his background had been leaked by Human Resources to his colleagues. On November 25, 2025 Matthew Dolan told someone on a call while Plaintiff was seated two rows away in Office that they were going to have a “big meeting” which included HR (“Human Resources”). On December 5, 2025 Amazon Security and Matthew Dolan had Plaintiff’s Human Resources Partner Alyse Griswold try to convince him to go home for the day despite not doing

anything wrong.

On September 13, 2026 Plaintiff observed that two Human Resources Business Partners ("HRBP") named Shivani Goswami and Yusra Khan had been included on an e-mail concerning an Attendance Violation. According to the e-mail Plaintiff was informed that he missed work for one week beginning on July 2, 2026 despite the time being accounted for. Plaintiff reported to the Newton-Wellesley Hospital Emergency Room on July 2, 2026 for symptoms which included weakness, nausea, and getting hot for an unspecified reason.

On September 17, 2026 a member of Loss Prevention reached out to Plaintiff and asked if they could please handle escalations sooner as inaction could affect their ability to review cameras and hold the actor accountable. Plaintiff did not see this as retaliation but as a statement that certain aspects of the business were being neglected.

On September 18, 2026 Plaintiff had a one-on-one call with his manager Kimberly McDonnell where she coached him after volunteering that he was reducing escalations in a support folder. The queue had a backlog extending three months which resulted in internal customers complaining multiple times. Plaintiff sought sympathy from his manager due to the continuous weaponization efforts directed at him. Kimberly McDonnell told him that it was personal, to keep it out of work, and that it's been going on for a long time. Plaintiff does not believe that these issues amounted to personal matters but rather that they were of serious nature involving insider threats engaging waste, fraud, and abuse.

Plaintiff added that he was worried that he would be placed into a performance review plan because he had been given a project with a completion date of February 2027 as it would not show that he accomplished much before the next review cycle. Plaintiff was assured that he was exempt from the mid-year review and that there was an internal conversation about him.

Plaintiff also vocalized his intention to initiate some smaller projects but was told that he did not know what was going on with the business despite knowing that certain processes were broken and non-existent.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. DENY Defendant Amazon.com Services LLC's Motion to Dismiss as to Counts I through VI;
2. Limit any workers' compensation exclusivity ruling to Counts VII and VIII, without affecting independently cognizable claims or damages recoverable under surviving claims;
3. Deny dismissal with prejudice and, alternatively, grant leave to amend.

Plaintiff respectfully requests oral argument if the Court determines that oral argument would assist in resolving the issues presented.

Dated: September 19, 2026

Respectfully submitted,
**CAMERON LACROIX**
l
aintiff, Pro Se
P.O. Box 620144
Newton, MA 02462
617-539-6662
cameronlacroix@proton.me

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 19, 2026.

Dated: September 19, 2026

Respectfully submitted,
/s/ Cameron Lacroix
CAMERON LACROIX
Plaintiff, Pro Se
P.O. Box 620144
Newton, MA 02462
cameronlacroix@proton.me